Civil Action No. 4:11-CV-00094-BO

| | |
|---|---|
| BRUCE BANNISTER; MAX DUTTON; and MARION TOWLES; <br><br> Towles, <br><br> vs. <br><br> WAL-MART STORES EAST, L.P., <br><br> Defendant. | **APPENDIX TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING MAX DUTTON'S CLAIMS** |

**D-8**

**Declaration of Eric Litchfield Exhibit 8**
E. Litchfield's Statement of Facts (2/6/2010)

## Individual Statement of Facts

Reference #

Individual Statement of Facts

| Full Name | Position | Facility/Div./Dept.# | Date |
|---|---|---|---|
| Eric L. Litchfield | Market Manager | 1379/1/9768 | 02/06/2010 |

General Statement of Facts

**(Please use black or blue ink pen)**

Store Managers that I have coached:

Abigail Davis (Caucasian/female) is on current D-day for job performance. Specifics of coaching include store standards, playbook execution, in stock conditions and leadership.

Kenneth Perry (African American/male) is on current verbal coaching for job performance. Specifics of coaching include store standards, in stock conditions and leadership.

I have had a number of personal discussions with my managers in old Market 486 over job performance, wage control, over-time spending, playbook execution and leadership.

I coach for conditions or failure to achieve/maintain company policies and/or standards. I do not treat people differently. I am firm, fair and consistent in my dealings with associates and treat all associates with respect and dignity.

The investigation into Max Dutton was initiated in April 2009 when former ASM, Tonja Moore, of Store 2000 sent a letter to the market office addressed to the MHRM, Tracey Battle, alleging mistreatment by Max Dutton. Tonja claimed that Max posted a picture of her in the store with a statement about her diet/eating habits. As a result of this letter, Tracey Battle and the MAPM, Dawana Riddick, initiated an investigation, which we later were advised should have been a Red Book. During their preliminary inquiry into Tonja's concerns, other associates at the store made additional allegations against Max. Issues were raised regarding his alleged authorization of inappropriate vendor contributions to CMW, fundraising on the premises by a non-associate, custody of store keys by an hourly associate, and the creation of a hostile work environment. The initial investigation into these allegations was coordinated with the Regional HR, Melody Fogarty, the Regional DO, Noah Johnson, and the Regional RAPM, Art Binder. At some point during the inquiry, it was decided that a review of the allegations would be conducted by an external HR. Accordingly, Marie Debarros (MRHM 125) and Adonica Spann (MHRM 151) conducted a visit to store 2000. After this external review, Noah Johnson and Art Binder had a discussion with Max in September in New Bern, and this was followed by an open door to the executive level by Max. In October, Jeffery McIver, (RHRM) conducted an inquiry into the investigation and Max' concerns.

After Jeffery completed his inquiry, the RGM, David Carmon, along with Noah Johnson and Art Binder, traveled to Kitty Hawk in early November 2009. During this visit, they informed Max that he would be placed on a D-day for violation of company policies, leadership, and store conditions vis-à-vis scheduling, playbook execution and CIFP. I was directed by David and Noah to deliver both the coaching and the PIP after my drafts of both documents were approved by the Regional team.

Page 1 of 3

Confidential
WMT 09291

**Individual Statement of Facts**

Tracey Battle and I met Max at his store in late November and delivered the coaching and PIP. That day, Max submitted his resignation to me. I accepted it and notified the Region through Noah Johnson.

Several weeks later, on approximately December 16, 2009, I visited the store, at which time Max asked to rescind his resignation. I informed him that I did not think he could, but that I would inform the region of his request. I contacted Noah and advised him of Max's desire to rescind his resignation.

On January 7, 2010, Tracey and I administered the first follow-up to Max on his PIP. During our talk with Max, Noah called me and confirmed that the company would not accept Max' resignation recession. Tracey and I informed Max of this and completed his first follow-up which was below expectations. On January 13th, I was contacted by Melody Fogarty to forward copies of Max' resignation letter, PIP and follow-up to Marlene Hunter who was handling an executive open door on the matter.

During this period, Max' store was not subject to excessive visits or attention, nor was he treated any differently due to any protected status.



Page 2 of 3

Confidential
WMT 09292

Have you previously reported/spoken about the incidents/issues described above to a manager or supervisor?

Yes **X**   No ☐

If yes, to whom: Noah Johnson, DO Reg 48, David Carmon RVP Reg 48, Art Binder RAPM, Melody Fogarty RHRM, Marlene Hunter RHRM, Jeffery McIVer, RHRM, Dawana Riddick MAPM, Tracey Battle MHRM

Date Reported: Multiple dates

Event Reported:

**Individual Acknowledgment**

I acknowledge and understand that:

- The meeting and report are confidential, and we will share any information with those who have a need to know to make an employment decision, or to help further the investigation.

- While this is a confidential matter and should not be discussed, you may have concerns/questions after today's conversation. If so, you may speak with me, my manager and/or your salaried HR Manager.

- Wal-Mart Discrimination & Harassment Prevention Policy (PD-19) strictly prohibits discrimination or harassment on the basis of that person's race, color, ancestry, ethnicity, religion, sex, pregnancy, national origin, age, disability, marital status, veteran status, sexual orientation, or any other legally protected status.

- Wal-Mart strictly prohibits any Manager, Supervisor, or other Associate from retaliating against a person who makes a good faith complaint of a Policy violation, including a PD-19 violation, or for providing a statement in connection with such a complaint. Any Associate who retaliates against someone for making a good faith complaint will be disciplined, up to and including termination.

- I can and should immediately report any alleged retaliation or other Policy violation to a Salaried Member of Management.

- The handwriting and initials that appear in this Statement are my own. The information I have submitted in this report is true, correct and complete to the best of my knowledge.

| Associate Name (Print) | Associate Signature | Date |
|---|---|---|
| ERIC LITCHFIELD | Eric Litchfield | 6FEB2010 |

Confidential

WMT 09293