IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

Civil Action No. 4:11-CV-00094-BO

| | |
|---|---|
| BRUCE BANNISTER; MAX DUTTON; and MARION TOWLES;<br><br>        Towles,<br><br>vs.<br><br>WAL-MART STORES EAST, L.P.,<br><br>        Defendant. | **REPLY IN SUPPORT OF DEFENDANT'S MOTION TO SEVER MISJOINED PARTIES OR IN THE ALTERNATIVE, FOR AN ORDER REQUIRING SEPARATE TRIALS** |

**EXHIBIT 1**
Dutton's Interrogatory Responses

| | |
|---|---|
| BRUCE BANNISTER; JAMES F. ("RICK") BURRIS, JR.; MAX DUTTON; PETE FLANIGAN; KATHY SOLES; AND MARION TOWLES, <br><br> Plaintiffs, <br><br> WAL-MART STORES EAST, L.P., <br><br> Defendant. | Civil Action No. 4:11-CV-00094-BO <br><br><br><br> **PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF MAX DUTTON** |

Plaintiff, Max Dutton (Plaintiff" and/or "Dutton") by and through his undersigned counsel, pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, hereby responds to Defendant's First Set of Interrogatories to Plaintiff as follows:

## GENERAL OBJECTIONS

1. Mr. Dutton objects to the Interrogatories and Requests for Production to the extent they call for the production of information or documents subject to any privilege, including the attorney client privilege and the work product doctrine.

2. Mr. Dutton objects to the Interrogatories and Requests for Production to the extent they exceed the scope of discovery under Federal Rule of Civil Procedure 26, 33 or 34.

3. Mr. Dutton objects to the Interrogatories and Requests for Production to the extent they require the production of information or documents that are not within the Mr. Dutton's control or custody.

4. Mr. Dutton objects to the Instructions and Definitions to the extent they create obligations beyond those required under the Federal Rules of Civil Procedure.

1

5. Any response or document produced that contains privileged information is produced inadvertently and by mistake and is neither intended to nor does waive any such privilege. Mr. Dutton reserves the right to demand the return of each and every copy of any document or any information that is privileged.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Please provide the name, address, telephone number, place of employment and job title of any person who has, claims to have, or whom Plaintiff believes may have knowledge or information pertaining to any fact alleged in the pleadings (as defined in Fed. R. Civ. P. 7(a)) filed in this Action, or any fact underlying the subject matter of this Action.

### ANSWER:

Max Dutton and Debbie Dutton
Mr. and Mrs. Dutton may be contacted through the undersigned counsel

Teresa Shanefelter
226 S. Fayette St. Apt. 101
Shippensbury, Pa. 17257
240-370-9137

Sammy Marriner
105 Hiram Dr.
Point Harbor, NC 27964
252-202-2649

Sharon Flowers – Walmart Assoc.
Walmart
252-261-6011

Marie Fugundas
4610 Roseman Trail
Cummings, Ga. 30040

Susie Mullen – Walmart Assoc.
252-261-6011
252-548-3093

2

Ann McPherson – Walmart Assoc.
252-261-6011

Jennifer Beamon – Walmart Manager-Elizabeth City, NC
252-338-3367

Pat Willey – Walmart Assoc.
110 Larry Ave.
Grandy, NC 27939

Charlie Lipsey
George Marshall and Assoc.
816 Seneca Park Rd.
Middle River, Maryland 21220
800-835-8587

Vickie Race - Walmart District Assistant
252-646-0667

Ruth Lewis
252-473-3151
Manteo, NC 27954

Neal Bennett – Walmart Manager
252-267-5876

Bruce Banister
612 S. Charles St.
La Grange, NC 28551
252-521-1527

Turner Thompson
Current Walmart Manager, Kitty Hawk
110 Widgeon Drive
Currituck, NC 27920
252-916-1985

Rick Hall – Walmart Williamston
252-799-1812

Bill Simons
Executive Vice President of Professional Services

Mike Duke
Wal-Mart CEO

3

Leon Carey
Vendor
Maurice Sporting Goods

Marie Debarros – Walmart HR
Myrtle Beach, SC

Tracey Battle – Market HR

Dawana Riddick - Market loss prevention

Tim Jackson
Former Walmart District Manager
540-903-9344

Ronnie Toms
Former Walmart Manager
7421 Founders Mill Way East
Glouchester, Va 23061
757-509-0608

Chris Mehler
Walmart District Manager
757-879-1967
804-695-0513

Edwardo Castro Wright
CEO Walmart

Carla Hurdle
115 Powell Rd.
Newport, NC 28570
252-312-4159

George Joyner
District Manager
540-209-0511

Debbie Gibson – Walmart Store 2000 Personnel Manager

Kim Grant – Walmart Store 2000 assoc. Store LostsPrevention

Judy Potter – Walmart Assoc - Cashier
252-261-6011

Tracey Helton – Walmart Co-manager

Teresa Chappell – Garden Center Manager
252-455-1118

Tracy Lynn Conner - Walmart Invoice Clerk, Ahoskie, NC
207 Brich Mill Rd.
Aulander, NC 27805
252-287-9523

Shirley Crank – Walmart assoc.
120 Forester Trail
Harbinger, NC 27941
252-261-6011

Barbara Taylor –Walmart assoc.
206 W. Kitty Hawk Rd.
Kitty Hawk, NC 27949
252-261-6011

Eric Litchfield
Wal-Mart

Rachel Bailey
Former Store manager
6909 Campbell Ct.
Suffolk, Va.
757-438-5787

Jeff Magiver – Wal-Mart HR from Florida

Janet Mahoney, Walmart Kitty Hawk Pharmacist
1-252-207-7896
1-252-441-6412,
Walmart 1-252-261-6011

Wendy Holcomb Walmart Kitty Hawk Pharmacist
1-252-261-6011

Marion Towles
1-910-261-5024
Ex-Walmart Manager

Mike Vanhees
1-757-374-3819
Ex Loss prevention District Manager for Walmart

5

Norman Taylor
1-910-352-7995  Store Manager Walmart

Pete Flannigan
Ex- Store Manager Walmart

Sam Wiggs Ex- Walmart Store Manager

Stanley Krammer Walmart associate 1-252-573-9942

Steve Mathews Walmart District Manager

Leslie Dach Executive Vice President of Walmart Corporate Affairs

Lance Delarosa Regional Vice President Walmart Stores Inc.

Dr. Robert Mann
902 Graydon Ave.
Norfolk, Va  23507
757-625-5555

Dr. Jeffery Powell
500 Independence Parkway Suite 100
Chesapeake, Va  23320
757-547-9714

**INTERROGATORY NO. 2:**

For each person identified in Plaintiff's response to Interrogatory No. 1, describe the specific nature and substance of the knowledge that Plaintiff believes each person may have.

**ANSWER:**

Mr. and Mrs. Dutton have knowledge of the wrongful acts by Wal-Mart employees, the effort to force Mr. Dutton to leave Wal-Mart, as well as the damage he suffered as a result of Wal-Mart's actions. Upon information and belief, the Wal-Mart management employees listed have knowledge of the investigation undertaken by Eric Litchfield. Upon information and belief, the former Wal-Mart employees and non-management employees have knowledge of Mr. Dutton's capabilities as a manager and the operation of his store while he was employed by Wal-Mart, and after he left Wal-Mart. Dr. Mann and Dr. Powell have knowledge of the harm to Mr. Dutton caused by Wal-Mart's wrongful actions.

6

**INTERROGATORY NO. 3:**

Describe in detail each item of financial or economic loss, or damage that Plaintiff claims in this action, whether as an affirmative claim or as a setoff, and include in the answer:

    (a)    An identification and itemization of each separate type and amount of financial or economic loss or damage, and an identification of each and every document Plaintiff relied upon in computing, or which concerns or relates to, Plaintiff's claimed financial or economic losses, or damages;

    (b)    The count or defense to which the loss or item of damages relates, and the category into which each loss or item of damages falls, i.e., back pay, front pay, compensatory damages, punitive damages, attorney's fees, interest and any other categories; and

    (c)    The factual basis for each item of damages, including an explanation of how Plaintiff calculated or computed each loss or item of damages and an explanation of any assumptions Plaintiff made in calculating or computing those loses or damages, and any mathematical formula used.

**ANSWER:** Mr. Dutton anticipated working another 12 years for Wal-Mart before retiring. He was unemployed for 15 months, and has now taken employment at a substantially reduced salary so that he can provide for his family.

Prior to leaving Wal-Mart, Mr. Dutton made $85,000 in salary and $100,000 in bonus. For the 15 months he was unemployed, he lost $231,249.90.

He now works at Harris Teeter and his salary is $63,000 per year, with anticipated bonuses of $1,800 per year. Over his remaining work life of 12 years, his lost income is $1,442,400.

Mr. Dutton also lost his 401(k) 6% company match of $9,300 per year. Over 12 years, that amounts to $111,600.

He lost the 15% company match for stock in the amount of $270 per year, for a total of $3,240 over 12 years.

Mr. Dutton also was forced to liquidate his 401(k) account and company stock to provide for his family during the time he was unemployed. As a result, he had to take a second mortgage on his home to pay the taxes.

Mr. Dutton had to pay $380 per month for 18 months for health insurance, which totaled $6,840. While employed at Wal-Mart, Mr. Dutton was paying approximately $60 per month. He is entitled to the difference.

7

In addition, while not a financial or economic loss in the sense that it can be calculated mathematically, Mr. Dutton suffered depression, loss of self-esteem, and other health problems as a result of the actions of Wal-Mart. Mr. Dutton incorporates his medical records in further response to this interrogatory.

### INTERROGATORY NO. 4:

Please identify the name, address and occupation of each person or entity who has performed any study or analysis relating to the damages sought by Plaintiff in this Action, and for each such person or entity, state whether a report or written opinion has been prepared, and the date of such report or opinion.

**ANSWER:** None.

### INTERROGATORY NO. 5:

Describe in detail all oral or written communications (including but not limited to oral or written statements, affidavits, narrative statements, reports, or other documents), whether or not made by agents or employees of the Defendant in this action, that Plaintiff believes support any aspect of Plaintiff's claims in this action, and include in Plaintiff's answer:

(a) The date of the communication;

(b) Whether the communication was written or oral;

(c) The identity of who made the communication;

(d) To whom the communication was made and/or copied; and

(e) A description of the substance of the communication.

**ANSWER:** Mr. Dutton objects to this interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Mr. Dutton further objects to the extent that an interrogatory asking a party to identify information that the party "believes supports any aspect of Plaintiff's claims" seeks the mental impressions of counsel, which are privileged and not subject to disclosure. Defendant has indicated that it intends to take Mr. Dutton's deposition, and he will be happy to share any information he has regarding relevant communications of which he is aware.

8

## INTERROGATORY NO. 6:

Describe in detail all alleged acts of disparate treatment that Plaintiff was supposedly subjected to while employed by Defendant, and include in Plaintiff's answer descriptions of the disparate treatment alleged in paragraphs 31, 32, 39, 40, 83, 178, 185, 188-189, and 193 of the Complaint. In doing so, please identify:

(a) The nature of the disparate treatment;

(b) The person(s) carrying out the alleged disparate treatment, and any witnesses;

(c) The date(s) on which the acts of alleged disparate treatment took place.

**ANSWER:** Defendant engaged in a variety of practices that reflect its disparate treatment. With regard to the dates of the disparate treatment, many of the practices, such as understaffing Mr. Dutton's store, were ongoing over many months, so it is not possible to provide each and every date on which such disparate treatment occurred. Mr. Dutton does not have first-hand knowledge of the actions of Wal-Mart with regard to Mr. Flanigan, so he is unable to comment on the allegations of Paragraphs 179, 185, 189, or193 of the Complaint. With regard to the disparate treatment of Mr. Dutton, he responds as follows:

June 10, 2009 – Mr. Dutton requested that his store should be being properly staffed according to Walmart standards since he had only 2 assistant managers. At a meeting in Washington, NC, Eric Litchfield ignored his request, and the store was never staffed properly. Mr. Dutton qualified for one shift co-manager and 6 assistants. Today, the store operates with 2 co-managers and 9 assistant managers.

Also in June 2009 – While at the jewelry counter on the sales floor along with his assistant manager, Sammy Marriner, Mr. Dutton informed Eric Litchfield about the associate's complaints regarding the mold problem they had at the store. Mr. Litchfield responded that Mr. Dutton should "keep it quiet and just tell everyone to toughen up".

June 12, 2009 – Mr. Dutton was performing a fund raiser for CHKD for the entire store and during the event he was kidnapped by Eric Litchfield. Mr. Dutton was forcefully taken out of the store at 7:15am until 5:30 pm that evening. Mr. Dutton traveled approximately 200 miles and was never told why this was occurring. This was very frightening not knowing where they were going, what was happening and when and if Mr. Dutton would be returning to his store. According to Walmart policy, this would be deemed gross misconduct on Eric Litchfield's part; it was extremely intimating and harassing. Mr. Dutton felt ambushed.

At 6:30 pm that same day, Mr. Dutton was called into his office by Eric Litchfield, Tracey Battle and Dawana Riddick. Tracey Battle asked Mr. Dutton if he was a "type A personality and a perfectionist" in a very demeaning manner. They also threatened Mr. Dutton by saying that they would be back to the store and if he "talked to anyone about this incident," he would be terminated.

An investigation of Mr. Dutton by Mr. Litchfield and others extended for many months, even though Wal-Mart's own policies require such investigations to be completed within 7 days. The investigation itself was part and parcel of Defendant's plan. Tracey Battle, Human Resource Manager, and Dawana Riddick, Market Asset protection, began the investigation, which led to no findings. They told associates in the store what to write on their statements. Mr. Dutton believes that misconduct was reported to management.

Per Walmart policy, the length of investigations are one week or less. The investigation of Mr. Dutton lasted 7 months. On July 14, 2009, Art Binder, Regional Asset Protection Manager, apologized to Mr. Dutton and promised that closure would be put on this lengthy investigation within a week or less, yet the "investigation" continued.

August 17, 2009 – Eric Litchfield informed Mr. Dutton that Maria, HR manager from Myrtle Beach, was coming to Kitty Hawk for a Red Store visit. This was totally untrue as a "Red Store Visit" involves an investigation surrounding union activity. This was not true because there was no union activity occurring. Maria came to the store with four other members of management: Bruce Bannister, Frank Daniels, Rick Hall, and Chris Evans. They interviewed associates. Mr. Dutton understood that the result of that visit was that the associates were happy. The other members of management told Mr. Dutton they did not even know why they were there.

Early September 2009 – Mr. Dutton had a 2-day meeting in New Bern, NC. Noah Johnson, Regional Operations Coordinator, and Art Binder, Regional Asset Protection Manager, took Mr. Dutton out behind the hotel and implicated that his career at Wal-Mart was ending. Eric Litchfield was around the side of the hotel. During that meeting Mr. Johnson said: "The writing is on the wall," which Mr. Dutton understood to mean that they intended to terminate him regardless of his performance. Mr. Dutton was so stunned, he stayed at another hotel, rather than where the meeting was held.

Oct. 12, 2009 – Mr. Dutton received a phone call from Jeff Magiver, HR manager from Florida, who told Mr. Dutton to meet him in Greenville, NC on Oct. 14, 2009, so he could do an additional interview and investigation because he was considered an unbiased individual with Walmart. Because the previous investigation did not result in any findings of improper conduct, Mr. Dutton was surprised and frustrated that he was being asked to drive 2 ½ hours to Greenville, but he did so.

Nov. 9, 2009 – David Carmen, Reg. VP, Noah Johnson, Reg. Ops Coordinator, and Art Binder, Reg. Asset Protection Manager came to Mr. Dutton's store. Mr. Dutton was conducting a morning meeting with all of his associates. David Carmen, RVP, made a comment that we are going to "put closure on the 100 year investigation". At the same time, he made the comment "I can fire you right now if I want," but went on to say: "This is not about how you run a store, you run a great store. You have been out here with no help." Mr. Dutton felt threatened and intimidated by the way the comments were conveyed. Mr. Dutton requested a consistency search on Mr. Dutton's having given his sign-on to my number one lead person because Mr. Dutton needed the help. Within a few weeks, a policy was put in place that would permit key person to use the manager's sign-on. Mr. Dutton believes that this policy was changed because

10

he asked for the consistency search knowing that every store has an invoice clerk that uses the manager's sign-on number.

Nov. 20, 2009 – Mr. Dutton was coached, and taken straight to a decision-making day because of the sign-on issue. Wal-Mart did not follow its own policies in this regard.

In January 2010, Mr. Dutton received a phone call from Eric Litchfield and was told to drive to the Walmart in Elizabeth City, NC. Mr. Dutton had completed 6 months of PIP educational work studies in only one month. He was told by Tracey Battle, HR manager, that he did a wonderful, outstanding job and could not believe that he completed all the work 100% in such a short time frame. At the time Mr. Dutton was completing the PIP, he suffered from medical issues and was hospitalized. Although Mr. Litchfield acknowledged that the work Mr. Dutton did on his PIP was excellent, he informed Mr. Dutton that Mr. Litchfield was going to rate him below standard because of his OUTS. At the time, Mr. Dutton had the second lowest out of stock in the entire market. Moreover, the out of stock issue had not been mentioned in the PIP.

The PIP accused Mr. Dutton of not having open communication with his associates, yet he was told by Eric Litchfield, Tracey Battle and Dawana Riddick that he spent too much time in his morning meetings listening to and addressing the concerns of my associates.

Mr. Dutton was accused of not following Walmart policy for CMN (Children's Miracle Network). Again, Mr. Dutton asked for a consistency search as many stores, even today, are holding the same fund raising events.

Mr. Dutton was repeatedly threatened by Eric Litchfield. At one point, Mr. Litchfield said "I have a bead on your head."

Mr. Dutton considered running for county commissioner. Prior to doing so, he secured all the necessary prior approvals from Walmart, and was told that Walmart supported his campaign. After he was elected, he was accused of deserting his duties as a store manager.

Mr. Dutton called the Walmart Ethics Hotline because of the investigation tactics that were used. Mr. Dutton believes that the investigation stopped and another group brought in from Myrtle Beach and Florida because it was clear that the investigation was not being handled appropriately. Maria from Myrtle Beach told Mr. Dutton: "You need to move to Myrtle Beach. Someone here is out to get you."

11

## INTERROGATORY NO. 7:

Describe in detail the factual basis for Plaintiff's claim that he was supposedly subjected to acts of negligent retention and negligent supervision while employed by Defendant. In doing so, please identify:

(a) The nature of the Defendant's acts of alleged negligent retention and negligent supervision;

(b) The person(s) carrying out the alleged negligent retention and negligent supervision; and

(c) The date(s) on which the acts of alleged negligent retention and negligent supervision took place, the identity of the person responsible for the underlying negligent act, and a description of the negligent act;

**ANSWER:** Mr. Dutton incorporates his response to the previous interrogatory. As a result of the acts described in response to the previous interrogatory, Wal-Mart negligently retained and failed to supervise the management personnel to whom Mr. Dutton reported, and who engaged in the "investigation" of Mr. Dutton that lasted most the calendar year 2009.

## INTERROGATORY NO. 8:

Please identify the name(s) and title(s) of the person(s) to whom Plaintiff allegedly complained regarding the form of any discrimination or negligence. In responding to this interrogatory, please provide:

(a) The date(s) on which Plaintiff complained;

(b) Whether each such complaint was oral or written;

(c) Any individuals/employees who received a copy of Plaintiff's complaint, if written;

(d) The name(s) and title(s) of the person(s) who witnessed the complaints; and

(e) A description of each response to each compliant.

**ANSWER:** Mr. Dutton attempted to use the Open Door Policy. He contacted the following individuals at various times: Art Binder, Regional Asset Protection Manager; Eduardo Castro Wright, President and CEO of Wal-Mart Stores USA; Mike Duke, Wal-Mart CEO; Bill Simons, Executive Vice President of Professional Services; Mike Moore; Rosalind Brewer; Noah Johnson; Thomas Hyde, Ethics VP; Susan Chambers, People/Personnel VP; and David Carmen.

Mr. Dutton does not recall the specific dates of each communication. Mr. Dutton's communications were oral, and he does not know if there were any witnesses on the Wal-Mart side of any conversation. He had no witnesses on his end.

Mr. Dutton first called Bill Simons. He next went to Mike Duke, Walmart CEO, with no response. Mr. Dutton then called Eduardo Castro Wright, CEO. Mr. Dutton believes at that time he was out of the country but upon his return, he did not respond at all. Mr. Dutton thinks that their offices had others return some of his calls, but they offered no assistance at all.

## INTERROGATORY NO. 9:

In Plaintiff's Complaint, Plaintiff alleges that he has suffered stress, anxiety, emotional distress, and other unspecified harm. If, in fact, Plaintiff is seeking damages for emotional distress, then identify any and all health care practitioners, including, but not limited to, physicians, surgeons, nurses, chiropractors, therapists, clinics, hospitals, hospices, pharmacies, laboratories or any other health care provider of any kind, who has examined, treated or conducted any medical tests on Plaintiff from January 1, 2007 to the present, and include in Plaintiff's answer:

- (a) The name, address, and telephone number of the physician, surgeon, nurse, chiropractor, therapist, clinic, hospital, hospice, pharmacy, laboratory or any other health care provider;

- (b) The disease, illness, injury, disability, defect, medical symptom or other physical or mental condition examined, diagnosed, or treated by such person or entity; and

- (c) A description of the course of treatment, if any, prescribed or recommended as to each disease, illness, injury, disability, defect, medical symptom or other physical or mental condition examined, diagnosed, or treated.

**ANSWER:** Mr. Dutton objects to this interrogatory as unduly burdensome. Mr. Dutton will provide copies of his medical records, which contain all of the information requested in the interrogatory.

13

**INTERROGATORY NO. 10:**

Please separately identify each and every disease, illness, injury, disability, defect, medical symptom or other physical or mental condition which Plaintiff claims was caused or aggravated by Defendant as a result of Defendant's alleged improper conduct set forth in the Complaint. For each disease, illness, injury, disability, defect, medical symptom or other physical or mental condition identified state:

- (a) The name, address, and telephone number of the physician, surgeon, nurse, chiropractor, therapist, clinic, hospital, hospice, pharmacy, laboratory or any other health care provider of any kind, who has tested for, diagnosed, or treated the condition identified;

- (b) The disease, illness, injury, disability, defect, medical symptom or other physical or mental condition examined, diagnosed, or treated by such person or entity; and

- (c) A description of the course of treatment, if any, prescribed or recommended as to each disease, illness, injury, disability, defect, medical symptom or other physical or mental condition examined, diagnosed, or treated.

**ANSWER:** Mr. Dutton objects to this interrogatory as unduly burdensome. Mr. Dutton will provide copies of his medical records, which contain all of the information requested in the interrogatory.

**INTERROGATORY NO. 11:**

Please state if Plaintiff has ever been a party in a lawsuit or other judicial or quasi-judicial proceeding (including, but not limited to, before an administrative agency), other than the present matter, and, if so, please identify the lawsuit or proceeding, whether you were plaintiff/claimant or defendant/respondent, the nature of the action, and the date of the action, and the court, agency, or other organization in which such matter was filed.

**ANSWER:** Mr. Dutton was the plaintiff in a lawsuit arising out of a motor vehicle accident in or around 2002. Mr. Dutton does not recall any additional information regarding the lawsuit.

### INTERROGATORY NO. 12:

Please identify each and every other source of income Plaintiff has had at any time during Plaintiff's employment with Defendant. For each source, please provide the name, address and telephone number, the amount of income and the time period such income was provided.

**ANSWER:** Mr. Dutton obtained employment with Harris Teeter in June 2011. He remains employed by Harris Teeter. His salary is $63,000 per year. He expects his bonus to be $1800 per year.

### INTERROGATORY NO. 13:

Identify the employer and every job for which Plaintiff has applied, sought, or held, including self-employment, since Plaintiff's separation from Defendant, and for each include:

- (a) The name, address and telephone number of each employer with whom Plaintiff has communicated with respect to seeking employment;

- (b) A description of the job for which Plaintiff applied and Plaintiff's efforts to follow-up on the status of each application;

- (c) For any job offered to Plaintiff but which Plaintiff declined, describe in detail the reasons for and the circumstances surrounding Plaintiff declining such offer;

- (d) For each job Plaintiff accepted, the dates of each employment, job titles and descriptions, Plaintiff's salary including all bonuses, commissions and prerequisites, names of immediate supervisors and reasons for leaving; and

- (e) The identity of any documents related to all such efforts to find employment.

**ANSWER:** Mr. Dutton incorporates by reference his response to the preceding interrogatory. Additionally, Mr. Dutton started a lawn care service in an effort to take care of his family. He did not make any money after deducting the costs of the equipment. Mr. Dutton applied to be the town manager of the Town of Southern Shores; he applied for a management position at the Gennette's Pier in Nags Head; he applied to Harris Teeter and Lowe's – both offered him positions, but he accepted the Harris Teeter position before Lowe's made its offer.

## INTERROGATORY NO. 14:

Please identify each person whom Plaintiff may use as an expert witness at trial, or with whom Plaintiff has consulted, and identify the substance of the opinions provided or to be provided by each such expert.

**ANSWER:** Mr. Dutton has not at this point identified anyone who may be called as an expert witness. If Mr. Dutton decides to do so, this response will be seasonably updated.

## INTERROGATORY NO. 15:

Describe in detail the factual basis for Plaintiff's Complaint allegations that the 2005 benefits strategy memorandum prepared by McKinsey & Company (the "McKinsey Memo"), and distributed by Susan Chambers to Wal-Mart's Execut9ive Committee, played any role in how Market manager Eric Litchfield (or any Wal-Mart manager) allegedly treated Plaintiff or Plaintiff's termination from Wal-Mart.

**ANSWER:** The Memo reflects Wal-Mart's knowledge that reducing the number of older management employees would result in significant cost savings to the company. The actions by Wal-Mart with regard to these plaintiffs are entirely consistent with the cost saving measures raised in the memorandum, and the memorandum is evidence that the termination of older management employees was done as part of a larger cost-saving tactic. Because discovery is ongoing, Plaintiffs reserve the right to supplement this response as additional facts are revealed.

**INTERROGATORY NO. 16:**

Describe in detail the factual basis for Plaintiff's allegation, in Paragraph 191 of the Complaint, that Divisional Vice President Henry Jordan and Regional Manager Ronny Hayes "complimented and recognized [Plaintiff's inventory program] for excellence."

**ANSWER:** Paragraph 191 refers to Mr. Flanigan. Mr. Dutton does not have personal knowledge of this.

Dated: April _____, 2013

                                                                         _____
Joseph H. Nanney, Jr.
N.C. Bar No. 18355
Meynardie & Nanney, PLLC
2840 Plaza Place, Suite 200
Raleigh, NC 27612
Telephone: (919) 747-7374
Facsimile No.: (919) 324-6590
*Counsel for Plaintiff Max Dutton*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Plaintiff's Responses to Defendant's First Set of Interrogatories to Plaintiff Max Dutton were served on this _____ day of April, 2013 upon counsel of record for Defendant by U.S. Mail, postage prepaid, and addressed as follows:

>Angela B. Cummings
>LITTLER MENDELSON, P.C.
>Bank of America Corporate Center
>100 North Tryon Street, Suite 4150
>Charlotte, NC 28202
>*Counsel for Defendant*

_____
Joseph H. Nanney, Jr.

18