IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:11-CV-94-BO

| | | |
|---|---|---|
| MAX DUTTON | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| WAL-MART STORES EAST, L.P. | ) | |
| Defendant. | ) | |

This matter is before the Court on defendant's motion for summary judgment as to the claims of plaintiff Max Dutton. Plaintiff has responded, defendant has replied, and the matter is ripe for review. For the reasons discussed below, defendant's motion is granted.

## BACKGROUND

A group of plaintiffs filed this action alleging unlawful employment practices by defendant as to themselves and other similarly situated individuals. Since the filing of the complaint, two plaintiffs' claims were transferred to different districts and several plaintiffs have stipulated to dismissal of their claims. Remaining before the Court is plaintiff Dutton and his claims for violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent supervision and retention under state law.[1]

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

---

[1] Defendant's remaining pending motions for summary judgment as to Towles' claims, to strike, and to sever [DE 100, 103, 110] are therefore DENIED AS MOOT.

56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Conclusory or speculative allegations do not suffice, nor does a "mere scintilla of evidence" in support of his case." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (citing *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir.1999) (per curiam)).

Plaintiff Max Dutton was hired by defendant in 1993 and was promoted to the position of store manager three years later. Dutton Dep. 162-63. For his entire career as a store manager, Dutton managed Store #2000 in Kitty Hawk, North Carolina. On the whole, Dutton received positive performance evaluations during his career with defendant. Dutton Dep. Exs. 13-15. Dutton's retirement took effect in February 2010. Battle Decl. ¶ 38.

In March 2009, an assistant store manager at Dutton's store filed a complaint against Dutton with human resources. Battle Dep. 5. The assistant store manager complained that Dutton had made inappropriate comments about her weight and personal appearance, that Dutton had treated other women inappropriately but that they were afraid to speak out, and that Dutton

2

had violated defendant's policies by allowing an hourly-employee to engage in activities reserved for management-level employees, including answering Dutton's emails, maintaining keys to the building, and using Dutton's personal computer password information. *Id.* at 3-5.

Human resources determined that an expansive investigation would be necessary in light of the breadth of the allegations and concerns that employees would not feel comfortable speaking about Dutton's activities if he was present. Battle Dep. 6. Three of defendant's representative's arrived at Store #2000 on June 12, 2009. Dutton left the store with one member of the investigation team, Litchfield, and drove to Elizabeth City, North Carolina, where they had lunch and visited another of defendant's stores. Dutton Dep. 31-34. Dutton contends that he felt he had no choice but to leave the store and accompany Litchfield or else be fired. *Id.*

In September 2009, Litchfield submitted an investigation report. Litchfield Decl. Ex. 3. The report noted that Dutton had violated the following Walmart Policies: access control, global ethics, prizes and awards, volunteerism and charitable contributions, discrimination/harassment prevention, and workplace violence. Dutton then filed an "open door complaint," alleging that he felt the investigation had been unfair. McIver Dec. ¶ 5. Dutton met with a human resources director regarding his complaint upon his return from a planned paid leave of absence, wherein he voiced his concern about not being aware of the specific allegations against him. *Id.* ¶ 10. Dutton was reminded of the confidential nature of the investigation into his actions, *Id.*, and the open door complaint filed by Dutton was ultimately determined to be without foundation and no wrongdoing was found to have taken place against him. *Id.* ¶ 23. The open door investigation further revealed that Dutton admitted knowing violations of defendant's policies. *Id.*

Though, at the conclusion of the investigation it was recommended to Dutton's

3

supervisor that Dutton be terminated, Dutton was instead issued the highest level of disciplinary action prior to termination, a decision-making day coaching and a performance improvement plan. Johnson Dec. ¶ 23. After meeting with human resources staff and being presented with a performance improvement plan, Dutton submitted a letter dated November 29, 2009, informing defendant's representatives who had led his investigation of his intent to retire effective February 1, 2010. Dutton Dep. Ex. 3. In his letter, Dutton stated that "I am happy and content to end my career at the store that has supported me throughout my Wal-mart career. . . . Wal-mart has become and always will be a part of my family." *Id.*

In December 2009, Dutton asked to rescind his retirement notification. Litchfield Dec. ¶ 36. This request was denied by defendant's regional team who had issued Dutton's decision-making day coaching and performance improvement plan discipline. *Id.* at ¶ 37. Dutton's retirement became effective on February 12, 2010. Battle Dep. ¶ 38. Dutton was fifty-five years old when his retirement took effect. Dutton was replaced at Store #2000 by a then forty-three year old male. *Id.* at ¶ 39. The current store manager of Store #2000 was also forty-three when selected to fill the position.

I. ADEA CLAIMS

Summary judgment is appropriate for defendant on Dutton's ADEA claims. Dutton has alleged in his complaint that defendant harassed and discriminated against him due to his age, and in the alternative that his market manager's (Litchfield) conduct created a hostile work environment based on his age. Dutton further contends that he was forced into early retirement, which the Court construes as a constructive discharge claim.

4

A.  DUTTON HAS FAILED TO PROFFER SUFFICIENT EVIDENCE OF HARASSMENT OR DISCRIMINATION UNDER THE ADEA

The ADEA makes it unlawful for an employer to "discharge any individual . . . because of [that] individual's age." 29 U.S.C. § 623 (a)(1). To succeed on an ADEA claim, a plaintiff must show that age was the but-for cause of his employer's decision. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009). To do so, a plaintiff may either come forward with direct evidence or come forward with circumstantial evidence and satisfy the *McDonnell Douglas* burden-shifting analysis. *See E.E.O.C. v. Warfield-Rohr Casket Co., Inc.*, 364 F.3d 160, 163 (4th Cir. 2004). Where a claim is based on circumstantial evidence, a plaintiff must first establish a prima facie case of age discrimination by showing he is a member of the protected class (40 years or older), that he suffered an adverse employment action, that he was performing his job to his employer's satisfaction at the time of the adverse action, and that his position remained open or he was replaced by a substantially younger person. *See Bodkin v. Town of Strasburg*, 386 Fed. App'x 411, 413-14 (4th Cir. 2010) (citing *Hill v. Lockheed Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004)).

Dutton has demonstrated that he is within the ADEA's protected class and that he was replaced by a substantially younger person. *See e.g. O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (sixteen year age difference between replacement and plaintiff sufficient prima facie evidence of age discrimination). Even assuming, however, without deciding, that the denial of his request to be reinstated after Dutton submitted his notice of retirement satisfies his burden of demonstrating that he suffered adverse employment action, Dutton has presented no genuine issue of material fact as to whether he was performing his

5

duties to his employer's satisfaction when he submitted his retirement notice or when he requested that his retirement notice be rescinded. Indeed, the only evidence Dutton has presented to rebut defendant's evidence that he was found to be in violation of several of defendant's policies sufficient to terminate his employment is his subjective belief that he was meeting defendant's expectations, his belief that certain policy violations had gone on for years without notice or reprimand, and the declaration of another employee who noted that the market manager spoke harshly while he found Dutton to be soft-spoken and kind. Daniels Dec. ¶¶ 4-11. The events leading to Dutton's retirement and defendant's decision not to allow him to rescind his retirement strongly suggest, however, that Dutton was failing to meet her employer's legitimate expectations. While Dutton alleges that his conduct was not egregious, the crux of the inquiry is not a plaintiff's assessment of his job performance, but the perception of the employer. *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996). The record demonstrates that defendant clearly perceived Dutton's performance as unacceptable. Further, even assuming plaintiff has established a prima facie case of discrimination, the record conclusively reveals a nondiscriminatory reason for defendant's employment decision, and plaintiff has created only a weak issue of fact as to whether the employer's proffered reason was pretextual. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-48 (2000).

Finally, Dutton has failed to demonstrate a genuine issue of material fact as to whether his age was the but-for cause of his proffered adverse employment action. Indeed, his own deposition reveals that the basis for such a claim is that Dutton does not know what else would have caused defendant to treat him differently, though he's not sure there is any evidence to support his claim. Dutton Dep. 254-55; 299-300. While Dutton has submitted the declaration of

a younger individual who opined that defendant had an unspoken policy to replace older managers with younger employees, Bailey Dec. ¶ 5, Dutton has proffered no evidence to demonstrate that such policy was in fact in effect. *See e.g. Carter v. Ball*, 33 F.3d 450, 456 (4th Cir. 1994) ("Statistical evidence can provide important proof of employment discrimination."). Absent additional evidence that age was the but-for cause of any disparate treatment of plaintiff, summary judgment is appropriate for defendant on plaintiff's claim for discrimination and harassment under the ADEA.

B.  DUTTON HAS FAILED TO PROFFER SUFFICIENT EVIDENCE OF A HOSTILE WORK ENVIRONMENT

In order to establish a hostile work environment claim, a plaintiff must show that (1) the subject conduct was unwelcome; (2) he was discriminated against because of his membership in a protected class; (3) the discriminatory behavior was sufficiently severe or pervasive to create an abusive working environment; and (4) a basis exists to impute liability to the employer. *Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325, 338 (4th Cir. 2003) (en banc).

Even considering all of Dutton's complaints and concerns, the Court cannot find sufficient evidence to hold that there is a question of fact as to whether his workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citation omitted). There is no evidence in the record that Dutton endured any physically threatening conduct or that the conduct of defendant's investigators unreasonably interfered with Dutton's workplace performance. *Id.* at 23. While Dutton contends that he was humiliated when

7

defendant began its investigation and he was forced to leave the store with market manager Litchfield without being told why, these incidents do not demonstrate an objectively offensive environment so severe that an abusive working environment resulted. *Faragher v. City of Boca Raton*, 524 U.S. 775, 777 (1998). Summary judgment is therefore appropriate for defendant on Dutton's claim that Litchfield's behavior created a hostile work environment.

C. DUTTON HAS FAILED TO PROFFER SUFFICIENT EVIDENCE THAT HE WAS CONSTRUCTIVELY DISCHARGED

"An employee is entitled to relief absent a formal discharge" if he can show that he was forced to retire or constructively discharged. *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186 (4th Cir. 2004). In order to establish a claim of constructive discharge, a plaintiff must show that his employer deliberately made his working conditions so objectively intolerable as to force the plaintiff to quit. *See Munday v. Waste Mgmt. of N.A., Inc.*, 126 F.3d 239, 244 (4th Cir. 1997). In cases involving age discrimination, a plaintiff must show that the employer's intentional actions were motivated by age bias. *See e.g. Alba v. Merrill Lynch & Co.*, 198 Fed App'x 288, 294 (4th Cir. 2006).

As discussed above, Dutton has not established there to be a genuine issue of material fact as to whether defendant's actions were motivated by age bias. Dutton's proffered basis for such claim is his own belief that age "must have been" the cause, though he can point to no evidence to support his claim. Even assuming, however, that defendant's actions were motivated by age bias, Dutton has not demonstrated that his working conditions were objectively intolerable. While Dutton has pointed to his feeling that his supervisors were determined that he leave,

8

> the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge. Every job has its frustrations, challenges and disappointments; these inhere in the nature of work. An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers. He is not, however, guaranteed a working environment free of stress.

*Honor*, 383 F.3d at 187. Indeed, an employee found to have been yelled at, chastised in front of customers, and required to work while injured has not been found to have endured objectively intolerable working conditions. On this record, based almost exclusively on Dutton's subjective perception that he had been singled out to be embarrassed, the Court cannot find sufficient evidence to permit Dutton to go forward on his claim for constructive discharge.

II.     CLAIMS UNDER STATE LAW

For many of the same reasons as discussed above, summary judgment is also appropriate for defendant on plaintiff's remaining state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent retention and supervision.

To establish a claim for intentional infliction of emotional distress (IIED), a plaintiff must show (1) extreme and outrageous conduct by the defendant (2) which was intended to and does in fact (3) cause severe emotional distress. *Waddle v. Sparks*, 331 N.C. 73, 83 (1992). Conduct is extreme and outrageous if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C.App. 349, 354 (2004) (citation omitted). Nothing in this record supports Dutton's claim that any of defendant's actions were beyond all possible bounds of decency. Indeed, "North Carolina courts have been extremely reluctant to find actionable IIED claims in the employment context," *Efird v. Riley*,

9

342 F. Supp.2d 413, 427 (M.D.N.C. 2004), and extreme and outrageous conduct has not been found even "where a supervisor screamed at employees, called them names, cursed at them, disrupted their work, threw menus at them, refused to grant pregnancy leave, and terminated an employee who left work due to labor pains." *Bratcher v. Pharm. Prod. Dev., Inc.*, 545 F. Supp.2d 533, 545 (E.D.N.C. 2008) (citing *Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 493-94 (1986)). Dutton relies on evidence of a seven-month investigation during which time he felt threatened and kept in the dark about the future of his career to support his IIED claim. As the cases cited demonstrate, Dutton's intentional infliction of emotional distress claim fails as a matter of law. *Lenins v. K-Mart Corp.*, 98 N.C.App. 590, 599 (1990).

To establish a claim for negligent infliction of emotional distress (NIED), a plaintiff must allege that (1) the defendant was negligent; (2) it was foreseeable to the defendant that his negligence would cause the plaintiff severe emotional distress; and (3) the conduct, in fact, caused severe emotional distress. *Guthrie v. Conroy*, 152 N.C.App. 15, 25 (2002).[2] Dutton relies on evidence of defendant's *intentional* acts to support his claims for discrimination under the ADEA as well as his NIED claim, but intentional conduct cannot, by definition, satisfy the negligence element of this North Carolina tort. *See Sabrowski v. Albani-Bayeux, Inc.*, 124 F. App'x 159, 161 * (4th Cir. 2005); *see also Mitchell v. Lydall, Inc.*, 16 F.3d 410, *3 (4th Cir. 1994) (unpublished).

Finally, because Dutton's tort claims of intentional and negligent infliction of emotional distress fail, his claim for negligent retention or supervision of Litchfield also fails. Dutton

---

[2]Dutton does not discuss his claim for NIED or his negligent retention and supervision claim in his opposition to defendant's motion for summary judgment, but the Court addresses them as they have not been expressly withdrawn.

10

cannot demonstrate that an employee of defendant committed an underlying tort, which is an essential element of a negligent supervision or retention claim. *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 774 (4th Cir. 1997); *see also Webb v. Starbucks Corp.*, 2008 WL 4891106 *12 (W.D.N.C. Nov. 12, 2008) (negligent retention claim could not go forward as underlying torts of intentional and negligent infliction of emotional distress had been dismissed). For these reasons, defendant is entitled to summary judgment on each of plaintiff's state law claims.

## CONCLUSION

Accordingly, for the reasons discussed above, defendant's motion for summary judgment as to plaintiff Dutton's claims [DE 96] is GRANTED. Defendant's motion for summary judgment as to plaintiff Towles' claims [DE 100], motion to sever [DE 103], and motion to strike [DE 110] are DENIED AS MOOT as plaintiff Towles and the remaining plaintiffs have stipulated to dismissal of their claims. The clerk is DIRECTED to enter judgment accordingly and to close the file.

SO ORDERED, this _24_ day of February, 2014.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

11

Case 4:11-cv-00094-BO   Document 116   Filed 02/25/14   Page 11 of 11